No. 25-1550

# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

NOVARTIS AG; NOVARTIS PHARMACEUTICALS CORPORATION,

*Plaintiffs-Appellees*,

v.

NOVADOZ PHARMACEUTICALS LLC; MSN PHARMACEUTICALS INC.; MSN LABORATORIES PRIVATE LIMITED,

*Defendants-Appellants*.

Appeal from the United States District Court for the District of New Jersey, No. 2:25-cv-00849, Hon. Evelyn Padin

## PLAINTIFFS-APPELLEES' RESPONSE TO MOTION TO EXPEDITE

MEGAN K. BANNIGAN
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, NY 10001

ZACH ZHENHE TAN
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105

DEANNE E. MAYNARD
SETH W. LLOYD
MORRISON & FOERSTER LLP
2100 L Street NW, Suite 900
Washington, DC 20037
Tel.: (202) 887-8740
DMaynard@mofo.com

*Counsel for Plaintiffs-Appellees*

APRIL 11, 2025

Despite having moved to expedite this appeal, defendants-appellants (collectively, "MSN") subsequently sought reconsideration in the district court, thus suspending the effectiveness of MSN's notice of appeal while that request is pending. MSN's expedition motion is thus premature, and Novartis responds to ensure that this Court has a fuller picture of the circumstances and current status of the parties' multi-forum dispute.

1. This case is about Novartis's blockbuster heart-failure medication and current top-selling drug ENTRESTO®. D.N.J.Dkt.4-3 (¶25). ENTRESTO®'s success is driven by Novartis's efforts over nearly a decade to educate patients and healthcare providers about the drug's lifechanging capabilities and to build a brand consumers know they can trust. *Id.* (¶30). Those efforts include Novartis's exclusive use of the same ENTRESTO® tablet designs for nearly a decade, billions of dollars in sales of ENTRESTO®, millions of dollars spent on marketing that features images of the ENTRESTO® tablets, and the distribution of millions of sample tablets. *Id.* (¶¶14, 20, 23, 25-26, 30, 34-44). In this way, Novartis has cultivated strong trade dress rights in the overall look and feel of each of the three ENTRESTO® doses, as well as the combined trio of doses. *Id.* Novartis's efforts have trained patients and healthcare providers alike to associate the combinations of size, shape, and color that comprise the ENTRESTO® trade dresses with the goodwill Novartis has cultivated under the ENTRESTO® brand. *Id.*

MSN, operating under the brand "Novadoz," hopes to capitalize on Novartis's hard-earned goodwill by marketing generic sacubitril/valsartan tablets that the district court found are "strikingly similar" to the ENTRESTO® tablets that consumers have learned to trust and associate with Novartis and its ENTRESTO® brand:

| Image of ENTRESTO® Tablet | | | |
|---|---|---|---|
| Image of MSN's Tablet[52] | | | |
| Dosage | 24/26 mg | 49/51 mg | 97/103 mg |

D.N.J.Dkt.32 at 13. MSN (as its executive admitted) deliberately "chose colors that reference the colors used for Entresto pills." D.N.J.Dkt.13-7 (¶10). Yet contrary to MSN's suggestion (MSN.Mot.7-8), FDA guidelines permit MSN to choose other combinations of color, shape, and size for its tablets, and other companies have chosen different combinations for the generic versions of ENTRESTO® that they hope to market. D.N.J.Dkt.42 at 31; *see* D.N.J.Dkt.13-8 (MSN filing pointing to approved generics with different colors or shapes). There is thus no basis for MSN's assertions that the injunction here against MSN's specific copycat tablet designs will deprive the public of access to other non-infringing generic versions of ENTRESTO®. MSN.Mot.7.

2. Novartis brought this suit against MSN for trade dress and trademark infringement to protect itself and consumers from the inevitable source confusion MSN's generic products will cause. As Novartis told the district court, that source confusion would irreparably harm Novartis by putting Novartis's reputation and consumer goodwill at the mercy of potential quality control and other issues with MSN's generic tablets. D.N.J.Dkt.4-5 (¶¶22-32). Novartis sought a preliminary injunction to avoid irreparable harm and to protect the public interest by preserving the status quo: no generic versions of ENTRESTO® are (or ever have been) on the market.

The district court granted the preliminary injunction, finding Novartis is likely to succeed in proving trade dress infringement; Novartis would be irreparably harmed were MSN to launch while this litigation is pending; and injunctive relief accords with the public interest. D.N.J.Dkt.32 at 5-18. In doing so, the district court found that any harm to MSN from a preliminary injunction would be self-inflicted because "MSN could have just picked different colors. Or different shapes. Or different sizes." *Id.* at 9, 18; *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 596 (3d Cir. 2002) (recognizing harm "discounted" in such circumstances).

3. Elsewhere, MSN has been challenging Novartis's patent rights in litigation related to MSN's attempts to market its generic versions of ENTRESTO®

before the end of Novartis's patent protection and related marketing exclusivity. Following a successful appeal by Novartis to the Federal Circuit, one piece of that patent litigation resulted in a final judgment in favor of Novartis, including an order setting the effective date of any FDA approval for MSN to market generic versions of ENTRESTO® to no earlier than July 16, 2025. *In re Entresto (Sacubitril/Valsartan) Pat. Litig.*, No. 19-cv-02053 (D. Del. Apr. 1, 2025), Dkt.508.

MSN thus has no first-mover advantage. *Contra* MSN.Mot.5-6. As the injunction granted against MSN by the Federal Circuit made clear, neither MSN nor any other generic, including Noratech, has a right to sell generic ENTRESTO® before July 16, 2025. *In re Entresto (Sacubitril/Valsartan) Pat. Litig.*, No. 23-2218 (Fed. Cir.), Dkt.65, Dkt.73, Dkt.127; *contra* MSN.Mot.5. Yet unlike other generic manufacturers that long ago recognized Novartis's valid patent rights and related marketing exclusivity, MSN continues to raise a series of baseless attacks on Novartis's rights to try to reopen that post-appeal final judgment in the patent case and launch MSN's products sooner. MSN.Mot.5-7.[1] MSN is therefore the one that has created the supposed "go/no go" posture that it wrongly insists warrants expedition. MSN.Mot.5-6.

---

[1] MSN's motion twice invokes a district court's denial of an injunction in the patent case but omits that, on appeal in the same case, the Federal Circuit immediately granted the injunction that the district court had denied. MSN.Mot.4-5 & n.1.

4

Because MSN's post-judgment challenges are as-yet-unresolved, however, the trade dress injunction here remains critical. MSN's prior statements show its intent to launch its generic during any potential window of time that MSN is unrestrained by a court order. *E.g.*, D.N.J.Dkt.32 at 3 (MSN's counsel indicating intent to launch if there were no court restraint during one potential window).

4. In this trade dress case, after filing a notice of appeal, MSN moved in the district court for a stay of the preliminary injunction pending appeal. D.N.J.Dkt.37. During the parties' briefing on that motion, the district court issued an order *sua sponte* requesting both parties to submit additional briefing "under the reconsideration standard." D.N.J.Dkt.43. On April 7, 2025, just 21 days after the district court's preliminary injunction order, MSN filed a response to the district court's order expressly asking that court to "reconsider and vacate" its order. D.N.J.Dkt.45 at 1. MSN told the district court to treat MSN's April 7th filing "as a motion for reconsideration," or alternatively to treat its earlier stay motion "as including a timely motion for reconsideration." *Id.* at 8 n.5. Novartis responded on April 9, 2025. D.N.J.Dkt.46. As of the filing of this response to MSN's motion to expedite its appeal, both MSN's stay motion and the parties' briefing on reconsideration remain pending before the district court.

5. In these circumstances, setting a schedule for this appeal would be premature, as jurisdiction over the preliminary injunction order currently remains in

5

the district court. MSN's request for reconsideration within 28 days of the district court's order entering a preliminary injunction "suspends the effect of any previously-filed notice of appeal until the entry of the order disposing of" MSN's request. 16A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure §3950.4 (5th ed. 2024). As this Court has explained in the specific context of a preliminary injunction appeal, "a timely motion to reconsider will preclude the filing of an effective notice of appeal." *Ortho Pharm. Corp. v. Amgen, Inc.*, 887 F.2d 460, 463 (3d Cir. 1989). Whether MSN's reconsideration request is treated "'as the functional equivalent of a Rule 59 motion'" or a Rule 60 motion, its request was made within the 28-day time period prescribed by Rule 59 and so delays the effectiveness of MSN's notice of appeal under the plain terms of Federal Rule of Appellate Procedure 4(a)(4). *Wiest v. Lynch*, 710 F.3d 121, 126-27 (3d Cir. 2017) (citation omitted); *see* Fed. R. Civ. P. 54(a) (defining "judgment" to include "any order from which an appeal lies").

Assuming MSN's notice of appeal nevertheless becomes effective in time for this Court to implement MSN's proposed briefing schedule, and despite the many unsupported and disputed factual assertions in MSN's expedition motion, Novartis does not oppose MSN's proposed briefing schedule—as long as the district court's preliminary injunction remains in force throughout this appeal. If these circumstances were to change, however, a different schedule may be needed to

protect against the many harms to the public and Novartis that would occur were MSN allowed to disrupt the status quo by launching its "strikingly similar" generic versions of ENTRESTO® during the pendency of this appeal.

Dated: April 11, 2025

Respectfully submitted,

/s/ Deanne E. Maynard

MEGAN K. BANNIGAN
DEBEVOISE & PLIMPTON LLP
66 Hudson Boulevard
New York, NY 10001

DEANNE E. MAYNARD
SETH W. LLOYD
MORRISON & FOERSTER LLP
2100 L Street NW, Suite 900
Washington, DC 20037
Tel.: (202) 887-8740
DMaynard@mofo.com

ZACH ZHENHE TAN
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105

*Counsel for Plaintiffs-Appellees*

**CERTIFICATE OF COMPLIANCE AND BAR MEMBERSHIP**

The foregoing filing complies with the relevant type-volume limitations and typeface and type style requirements of the Federal Rules of Appellate Procedure because it has been prepared using a proportionally spaced typeface, including serifs, in 14-point Times New Roman font using Microsoft Word and includes 1,383 words, excluding the parts exempted by the Rules.

Pursuant to Local Appellate Rules 28.3(d) and 46.1(e), I hereby certify that I am an active member in good standing of the Bar of the United States Court of Appeals for the Third Circuit.

Dated:  April 11, 2025                             /s/ Deanne E. Maynard
                                                                Deanne E. Maynard

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Third Circuit by using the CM/ECF system on April 11, 2025.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: April 11, 2025                          /s/ Deanne E. Maynard
                                                                 Deanne E. Maynard

sf-6673023